**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY,<br>    *Plaintiff*,<br><br>v.<br><br>SOUTHERN CONNECTICUT GAS COMPANY,<br>    *Defendant.* | 19-cv-00534 (KAD)<br><br><br><br>February 21, 2020 |

**MEMORANDUM OF DECISION RE:**
**DEFENDANT'S MOTION TO DISMISS (ECF NO. 18)**

Kari A. Dooley, United States District Judge:

Plaintiff Zurich American Insurance Company ("Zurich" or the "Plaintiff") filed this action as subrogee to its insured, 300 PRW, LLC ("300 PRW"), which owns property located at 300 Post Road West in Westport, Connecticut (the "Property") for which Defendant Southern Connecticut Gas Company ("SCG" or the "Defendant") provides gas services. (Compl. ¶¶ 6–7, ECF No. 1.) The Plaintiff alleges one count of negligence against the Defendant in connection with an alleged accident at the Property involving subfreezing temperatures that led to frozen pipes and extensive water damage. On June 28, 2019, SCG moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 18.) In its supporting memorandum (ECF No. 18-1), SCG asserts that Zurich's action is barred by a limitation of liability provision embodied in the operative tariff that is approved by, and filed with, the Connecticut Public Utilities Regulatory Authority (the "PURA"), which SCG submits is binding on Zurich under the "filed rate doctrine." Zurich filed its opposition to the motion to dismiss on July 26, 2019 (ECF No. 27) and SCG filed a reply

1

brief on August 8, 2019. (ECF No. 28.) For the reasons that follow, Defendant's motion is GRANTED.

**Background and Procedural History**

Zurich alleges that on January 2, 2018, a sprinkler pipe/head ruptured at the Property due to subfreezing temperatures, resulting in a claim being made under 300 PRW's insurance policy. (Compl. ¶¶ 9, 12–13.) Zurich alleges that the accident was the result of clogged filters in the gas meter that prevented the flow of gas with which to heat the Property. Zurich seeks to hold SCG liable for its purported failure to maintain adequate gas and heating services so as to prevent the sprinkler pipes from freezing. (*Id.* ¶¶ 8–11.) On April 10, 2019, Zurich filed this action against SCG alleging one count of negligence based upon SCG's alleged negligent interruption of gas services to the Property, negligent supervision of its work crew, failure to inspect the gas service and gas filters to assure proper functioning, and failure to warn 300 PRW of the interruption in services.[1] (*Id.* ¶ 16.)

SCG's gas rates are set by a tariff that is approved by and filed with the PURA. A copy of the tariff that went into effect on January 1, 2018 (the "SCG Tariff") between SCG and its customers is attached as Exhibit A to SCG's brief. (ECF No. 18-2.) It includes a number of terms and conditions which "apply to all gas rates, to the supply of gas service and to all contracts for gas service." (SCG Tariff at 153.) One of these terms, captioned "Maintenance of Gas Supply by Company," provides in full:

> The Company endeavors to provide a regular and uninterrupted supply of gas or firm delivery service, but does not guaranty[sic] continuous service. Whenever it becomes necessary for the Company to curtail gas to its customers because of an insufficient supply to meet total customer requirements, such curtailment shall be made in accordance with the Load Curtailment Plan approved by the [PURA] and these Rules and Regulations. The

---

[1] This Court's jurisdiction is properly invoked under 28 U.S.C. § 1332(a)(1), as the Plaintiff is a New York corporation with its principal place of business in Illinois, the Defendant is a Connecticut company with its principal place of business in Connecticut, and the amount in controversy exceeds $75,000. (Compl. ¶¶ 1, 3–4.)

> Company cannot be and is not responsible in contract, tort or otherwise for any loss or damage (direct, indirect or consequential) to any persons or property resulting in any way from any interruption of service or any change in characteristics of service, including but not limited to low or inadequate pressure, regardless of the cause of such interruption or change, unless such loss or damage is the result of willful misconduct or gross negligence on the part of the Company.

(*Id.* at 155–56 ¶ 19.) Citing this paragraph, SCG argues that this action must be dismissed under the filed rate doctrine.[2]

**Standard of Review**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the complaint's factual allegations as true and must draw inferences in the plaintiff's favor. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "In addition to the allegations of the complaint, the Court may also consider matters of which judicial notice may be taken," *Hohmann v. GTECH Corp.*, 910 F. Supp. 2d 400, 405 (D. Conn. 2012), which include tariffs publicly filed with a regulatory authority, *Marcus v. AT & T Corp.*, 938 F. Supp. 1158, 1164–65 (S.D.N.Y. 1996), *aff'd*, 138 F.3d 46 (2d Cir. 1998). The "complaint must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Accordingly, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678) (brackets omitted).

---

[2] Because the alleged accident at the Property occurred one day after the SCG Tariff went into effect, SCG has also attached as Exhibit B the earlier version of the tariff, which was effective from August 11, 2011 and includes an identical limitation of liability provision. (*See* ECF No. 18-3 ¶ 5; Def.'s Mem. at 3 n.3.) Zurich has not contested applicability of the SCG Tariff effective January 1, 2018 and so the Court refers to this more recent iteration throughout its Memorandum of Decision.

3

**Discussion**

    **The Filed Rate Doctrine**

The filed rate doctrine, also known as the filed tariff doctrine, "holds that any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Simon v. KeySpan Corp.*, 694 F.3d 196, 204 (2d Cir. 2012) (quoting *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994)). Under the doctrine, "[a]ll customers are 'conclusively presumed' to have constructive knowledge of the filed tariff under which they receive service." *Fax Telecommunicaciones Inc. v. AT & T*, 138 F.3d 479, 489 (2d Cir. 1998) (citation omitted). The "doctrine has been extended across the spectrum of regulated utilities," "is rigid and unforgiving" in its application, and "bars both state and federal claims" when properly invoked. *Simon*, 694 F.3d at 205 (internal quotation marks and citations omitted). It derives from the desire to avoid judicial intervention in the province of the regulatory authorities responsible for allocating the applicable legal rights between the industry and its customers (the "justiciability" concern) and to avoid divergent litigation outcomes that would undermine rate uniformity (the "discrimination" interest). *See Wegoland*, 27 F.3d at 19; *see also Simon*, 694 F.3d at 205.

Courts also "use the filed rate doctrine to, <u>inter</u> <u>alia</u>, ensure that carriers and customers comply with the terms of their tariff agreements" and have applied it "not only to rates or charges, but also to non-price aspects of services." *Colon de Mejias v. Malloy*, 353 F. Supp. 3d 162, 176 (D. Conn. 2018) (quotation marks, alterations, and citations omitted); *see also ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 222 (2d Cir. 2001) ("[T]he filed-rate doctrine bars state-law claims not only that pertain directly to the *price* of telecommunications services subject to an FCC filing, but also state-law claims that concern various *nonprice* aspects, such as 'service,

4

provisioning, and billing options.'") (quoting *Am Tel. and Tel. Co. v. Central Office Tel., Inc.*, 524 U.S. 214, 220 (1998)).

The "non-price aspects of services" that are deemed binding on a customer, include as relevant here, limitations on liability. For example, in the century-old case of *W. Union Tel. Co. v. Esteve Bros. & Co.*, 256 U.S. 566, 568 (1921), relied upon by SCG, the defendant, Western Union Telegraph Company ("Western Union"), transmitted an unrepeated cable message to the plaintiff company which erroneously directed the sale of 2,000 bales of cotton when the message should have read 200 bales, resulting in a loss to the plaintiff of over $30,000. However, the operative tariff governing telegraph and cable rates filed with the Interstate Commerce Commission contained a limitation of liability provision stating that Western Union "shall not be liable for mistakes in transmission of any unrepeated message, beyond the amount of that portion of the tolls which shall accrue to it." *Id.* at 568–69 (alterations and internal quotation marks omitted). As a result, the Supreme Court held that the plaintiff's damages were limited to Western Union's share of the toll, reasoning that "[t]he limitation of liability was an inherent part of the rate" that "[t]he company could no more depart from . . . than it could depart from the amount charged for the service rendered." *Id.* at 571. It sustained this finding even though the plaintiff was not aware of the tariff—holding that "a rate lawfully established must apply equally to all, whether there is knowledge of it or not." *Id.* at 573. This iteration of the doctrine continues to apply with equal force under modern regulatory frameworks. *See, e.g.*, *ICOM Holding*, 238 F.3d at 222–23 (holding that the plaintiff's breach of contract claims for the defendant's failure to install certain telecommunications services were barred by the filed rate doctrine where the operative tariff absolved the defendant of service guarantees, precluded the defendant's liability for damages

flowing from, *inter alia*, any failure to furnish services, and expressly limited a customer's remedies "to the extension of allowances" set forth in the tariff).

**The Filed Rate Doctrine Under Connecticut Law**

At oral argument, the Plaintiff asserted that the doctrine, which is a creature of federal common law, should not apply to Zurich's negligence claim because it has never been established or adopted as the law of the State of Connecticut.[3] As an initial matter, the parties agree that Zurich's claims are governed by the substantive law of Connecticut. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 152 (2d Cir. 2013) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Although the parties did not brief this threshold issue, the Court must begin its analysis by deciding whether the Connecticut Supreme Court would recognize and adopt the filed rate doctrine under the circumstances presented here. *See ARMOUR Capital Mgmt. LP v. SS&C Techs., Inc.*, 407 F. Supp. 3d 98, 103 (D. Conn. 2019) ("Absent a decision from a state's highest court on a question of state law, a federal court's role is to carefully predict how the state court would rule on the issue presented.").

Although the Court lacks guidance from Connecticut's appellate courts, the Connecticut Superior Court has recognized the doctrine's "continuing vitality" in a different context—federal agency preemption of state regulatory action. *See Connecticut Light & Power Co. v. Dep't of Pub. Util. Control*, No. CV-980492697S, 1999 WL 185101, at *7 (Conn. Sup. Ct. Mar. 9, 1999) (citing *Central Office*, 524 U.S. 214). In addition, the Connecticut legislature has enacted a statute which provides in relevant part that "[n]o public service company may charge rates in excess of those

---

[3] The Connecticut Supreme Court has neither rejected nor adopted the doctrine and has, to the Court's knowledge, addressed it only once fleetingly in a footnote. *See State v. Acordia, Inc.*, 310 Conn. 1, 10 n.3, 73 A.3d 711 (2013) (noting that the court need not reach the issue of whether the plaintiff's damages were barred by the filed rate doctrine due to the court's holding on an alternate ground).

previously approved by the Public Utilities Control Authority or the [PURA] except that any rate approved by the Public Utilities Commission, the Public Utilities Control Authority or the [PURA] shall be permitted until amended by the [PURA] . . . ." Conn. Gen. Stat. § 16-19(a). One court in this District has characterized this provision as effectively codifying the filed rate doctrine. *See Colon de Mejias*, 353 F. Supp. 3d at 176 n.7.

Two other courts in this District also recently dismissed claims pursuant to the filed rate doctrine when applying Connecticut law. *See Dane v. UnitedHealthCare Ins. Co.*, 401 F. Supp. 3d 231, 239 (D. Conn. 2019) (holding that because the plaintiff "is seeking relief for an injury allegedly caused by the payment of a rate on file with a regulatory commission"—*i.e.*, the Connecticut Department of Insurance, the plaintiff's "claims are barred by the filed rate doctrine"); *Sterling v. Securus Techs., Inc.*, No. 3:18-CV-1310 (VAB), 2019 WL 3387043, at *9 (D. Conn. July 26, 2019) (holding that the plaintiffs' challenges to telephone calling rates and fees as violative of the Connecticut Unfair Trade Practices Act were barred by the filed rate doctrine because the rates were governed by a tariff approved by the PURA); *see also Lentini v. Fid. Nat. Title Ins. Co. of New York*, 479 F. Supp. 2d 292, 300–02 (D. Conn. 2007) (acknowledging the doctrine's potential application to claims brought under Connecticut law but holding that it did not bar action where the claim did not implicate the non-justiciability nor the anti-discrimination rationales and the plaintiff was instead seeking "to enforce the filed tariff"). Indeed, the Plaintiff has not identified, and the Court is not aware of, any state that has outright rejected the filed rate doctrine. And the Court sees no reason to predict that the Connecticut Supreme Court would part ways with the otherwise overwhelming weight of available authority.[4]

---

[4] The Court's survey of states which have considered the issue reveals that the doctrine has been embraced in many jurisdictions and across several industries. *See, e.g.*, *Christoph v. AARP, Inc.*, No. CV 18-3453, 2019 WL 4645172, at *4–*5 (E.D. Pa. Sept. 23, 2019) (dismissing challenge to insurance rates approved by state regulators under

7

**The Filed Rate Doctrine as Applied to Zurich's Claim**

The Court next turns to the issue of whether Zurich's negligence claim is precluded by the doctrine under the terms of the SCG Tariff. The tariff is binding as between SCG and Zurich's insured, and, accordingly, on Zurich as subrogee. *See, e.g.*, *Tucker v. Am. Int'l Grp., Inc.*, 179 F.

---

Pennsylvania's filed rate doctrine); *McCarthy Fin., Inc. v. Premera*, 347 P.3d 872, 876 (Wash. 2015) (*en banc*) (finding insurance policyholders' claims barred by the doctrine "because to award either of the specific damages requested by the Policyholders a court would need to reevaluate rates approved by the [Washington Office of the Insurance Commissioner] and thereby inappropriately usurp the role of the OIC"); *Maxwell v. United Servs. Auto. Ass'n*, 342 P.3d 474, 488 (Colo. App. 2014) (holding that "the filed rate doctrine applies to Colorado's insurance industry" and noting that in so doing "we align our decision with the considerable weight of authority from other jurisdictions") (quotation marks and citation omitted); *Pac. Lightnet, Inc. v. Time Warner Telecom, Inc.*, 318 P.3d 97, 111–12, 123 (Haw. 2013) (reviewing instances in which the Hawaii Supreme Court has applied the doctrine and distinguishing them from a situation where a plaintiff does not seek to vary but, rather, intends to enforce the tariff's terms); *Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 416 (S.D.N.Y. 2009), *aff'd sub nom. Roussin v. AARP*, 379 Fed. App'x 30 (2d Cir. 2010) (observing that "New York courts have routinely applied the filed rate doctrine to bar plaintiffs' claims seeking the recovery of insurance premiums that have been approved by the [New York State Department of Insurance]"); *Schermer v. State Farm Fire & Cas. Co.*, 721 N.W.2d 307, 317 (Minn. 2006) (applying the doctrine to filed insurance rates that are approved by the Minnesota Department of Commerce); *Edge v. State Farm Mut. Auto. Ins. Co.*, 623 S.E.2d 387, 392 (S.C. 2005) (adopting the doctrine as state law and citing its persuasive policy, which "preserves the stability, uniformity, and finality inherent in rates filed with the regulatory agency and what has been determined to be a reasonable rate by that agency"); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex. 2002) (upholding tariff provision that limited liability for personal injury damages arising from electric company's ordinary negligence as reasonable under the filed rate doctrine); *Valdez v. State*, 54 P.3d 71, 75 (N.M. 2002) (upholding dismissal of claims challenging telephone rates authorized by the New Mexico Public Regulation Commission under the filed rate doctrine); *Am. Bankers Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1205 (Miss. 2001) (observing that "[a]lthough some jurisdictions have recognized exceptions to the filed rate doctrine, the acceptance of the doctrine's basic applicability is near-universal" but finding that the doctrine would not bar "tortious conduct in the *performance*, rather than the rates and terms, of the contract in question"); *Com. ex rel. Chandler v. Anthem Ins. Companies, Inc.*, 8 S.W.3d 48, 52 (Ky. Ct. App. 1999) (agreeing "that the filed rate doctrine, although not heretofore applied in Kentucky by name, has nevertheless been recognized in Kentucky in principle"); *Amundson & Assocs. Art Studio, Ltd. v. Nat'l Council on Comp. Ins., Inc.*, 988 P.2d 1208, 1214 (Kan. 1999) (same, as to Kansas); *N.C. Steel, Inc. v. Nat'l Council on Comp. Ins.*, 496 S.E.2d 369, 372 (N.C. 1998) (adopting the doctrine to bar challenges to workmen's compensation rates approved by the North Carolina Insurance Commissioner); *Cullum v. Seagull Mid-S., Inc.*, 907 S.W.2d 741, 745 (Ark. 1995) (adopting the doctrine as barring tort claims challenging natural gas rates approved by the Arkansas Public Service Commission); *Prentice v. Title Ins. Co. of Minnesota*, 500 N.W.2d 658, 663–64 (Wis. 1993) (upholding dismissal of claims challenging alleged price fixing of title insurance premiums under the doctrine); *In re Sys. 99*, 847 P.2d 741, 743 (Nev. 1993) (applying the doctrine to motor carrier rates filed with the Nevada Public Service Commission); *Teleconnect Co. v. US W. Commc'ns, Inc.*, 508 N.W.2d 644, 648 (Iowa 1993) (holding that the doctrine barred suit by one utility against another and observing that "[t]he filed tariff doctrine prohibits a customer of a utility from suing that utility in contract or tort over terms governed entirely by publicly filed tariffs"); *see also Lebowitz Jewelers Ltd., Inc. v. New England Tel. & Tel. Co.*, 508 N.E.2d 125, 128 (Mass. App. Ct. 1987) (upholding limitation of liability provision filed in public tariff as barring negligence action against telephone company); *Lee v. Consol. Edison Co. of New York*, 413 N.Y.S.2d 826, 828 (N.Y. App. Div. 1978) (same, as to limitation of liability provision filed in public utility's tariff schedule); *cf. Satellite Sys., Inc. v. Birch Telecom of Oklahoma, Inc.*, 51 P.3d 585, 589 (Okla. 2002) (observing that "courts have generally upheld tariff liability limitations for ordinary negligence within a regulatory agency's authority" but "overwhelmingly reject attempts to limit liability either by contract or by tariff for gross negligence, willful misconduct, and fraud" and holding that tariff was unenforceable to the extent it limited liability for fraud).

8

Supp. 3d 224, 248 (D. Conn. 2016) ("An insurer, as subrogee or assignee of claims of its insured, stands in the insured's shoes and is subject to any and all defenses which are available against the insured had he brought suit in his own name.") (quoting *Southland Corp. v. Self*, 36 Conn. Supp. 317, 319, 419 A.2d 90 (Conn. Sup. Ct. 1980)).

As noted previously, the SCG Tariff provides in part that SCG is not liable in tort "for any loss or damage . . . resulting in any way from any interruption of service or any change in characteristic of service" unless attributable to SCG's "willful misconduct or gross negligence." (SCG Tariff ¶ 19.) Zurich does not plead willful misconduct or gross negligence, and so the only outstanding question is whether Zurich's ordinary negligence claim is premised on a claim for "loss or damage . . . resulting in any way from any interruption of service or any change in characteristic of service." The allegations in the complaint make manifest that the answer to the inquiry is yes. Specifically, the complaint alleges that "[a]s a direct and proximate result of SCG's negligent acts and omissions, *the interrupted gas utility services* caused the sprinkler pipe/head rupture due to subfreezing temperatures which allowed the escaping water to damage the Subject Property and its contents." (Compl. ¶ 17 (emphasis added).). By its own pleading it is clear that Zurich seeks to recover for damages caused by an interruption in the supply of gas to the Property—a claim that appears to fall within the heart of the tariff's limitation of liability provision.

Notwithstanding, Zurich asserts that the gravamen of its complaint does not center on an interruption in service but, rather, on, *inter alia,* the negligent maintenance of gas filters, and that the filed rate doctrine therefore has no application because the claim falls outside of the tariff's scope. The Court disagrees. According to the complaint, the gas filters became clogged due to SCG's negligent maintenance, negligent supervision of SCG work crews, and negligent failure to inspect the filters. And as a result of the clogged filter, gas stopped flowing into the Property.

9

Zurich's allegations of negligence are simply alternative causes of the clogged filter and resultant interruption of gas service. Yet the SCG Tariff's limitation of liability provision clearly precludes liability for all service interruptions "regardless of the cause of such interruption." (SCG Tariff ¶ 19.)

Zurich also relies upon the context in which the limitation of liability provision appears in the tariff—a paragraph captioned "Maintenance of Gas Supply by Company." As stated above, the tariff begins by stating that SCG "endeavors to provide a regular and uninterrupted supply of gas or firm delivery service, but does not guaranty[sic] continuous service." (SCG Tariff ¶ 19.) It next states that "[w]henever it becomes necessary for the Company to curtail gas to its customers because of an insufficient supply to meet total customer requirements, such curtailment shall be made in accordance with the Load Curtailment Plan approved by the [PURA] and these rules and regulations." (*Id.*) The limitation on liability language appears immediately following this statement. From this, Zurich asserts that the limitation on liability that follows extends only to those circumstances where gas supply is necessarily curtailed due to insufficient supply. Again, the Court disagrees. The all-inclusive language contained in the liability-limiting provision precludes such a narrow reading of the tariff:

> The Company cannot be and is not responsible in contract, tort or otherwise for any loss or damage (direct, indirect or consequential) to any persons or property resulting in **any way from any interruption of service** or any change in characteristics of service, including but not limited to low or inadequate pressure, **regardless of the cause of such interruption** or change, unless such loss or damage is the result of willful misconduct or gross negligence on the part of the Company.

*Id.* (emphasis added). Indeed, Zurich's argument is to invite the Court to ignore this expansive and unambiguous language in favor of a strained reading that privileges arguable context over explicit text—an invitation which the Court declines. *See Auto Glass Exp., Inc. v. Hanover Ins. Co.*, 293 Conn. 218, 226, 975 A.2d 1266 (2009) ("A court will not torture words to

import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a written instrument must emanate from the language used in the writing rather than from one party's subjective perception of the terms") (quotation marks, citation, and alterations omitted).

In sum, the SCG Tariff unambiguously forecloses liability short of willful misconduct or gross negligence for service interruptions "regardless of the cause," which necessarily includes the allegation that gas service was interrupted due to SCG's negligence.[5]

Finally, Zurich cites the dual non-justiciability and anti-discrimination aims of the doctrine and argues that neither is implicated here. *Cf. Marcus v. AT&T Corp.*, 138 F.3d 46, 59 (2d Cir. 1998) (explaining that "the doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue."). As the Supreme Court has clarified, however, "discriminatory 'privileges' come in many guises, and are not limited to discounted rates." *Central Office*, 524 U.S. at 224. The Court agrees with SCG that this case implicates the anti-discrimination interest because if

---

[5] Because the Court concludes that the tariff is unambiguous, the Court need not entertain Zurich's argument that the tariff should be construed against SCG as its drafter. *See Cont'l Can Co. v. United States*, 272 F.2d 312, 315 (2d Cir. 1959) ("Ambiguity should be resolved against the carrier where the tariff, having been written by the carrier, is vulnerable against the carrier if the tariff's meaning is ambiguous") (quotation marks and citation omitted); *accord. LSB Indus., Inc. v. Prudential Lines, Inc.*, 736 F.2d 10, 12–13 (2d Cir. 1984). Nor does the Court find persuasive Zurich's remarkable contention that the *Western Union* and *ICOM* cases cited by the Defendant are distinguishable because the plaintiffs there sought privileges that were expressly barred by the relevant tariffs whereas here, Zurich is seeking to enforce SCG's duty to maintain its filters under the terms of the tariff. Zurich cites language in the tariff that "[o]nly authorized representatives of the Company or its agents have the right to turn on, turn off, connect or disconnect, a meter or service pipe; or repair, maintain or disconnect other property owned by the Company." (SCG Tariff at 155 ¶ 15.) And at oral argument Zurich also cited other provisions of the SCG Tariff applicable to SCG's equipment, including one that states that "mains, service pipes and connections shall be maintained by and remain the property of the Company." (*Id.* at 153 ¶ 5.) Thus, Zurich asserts, because SCG is responsible for repairing or maintaining the company's property—including its gas filters—it necessarily follows that it can be held liable by a customer for its failure to do so. However the mere fact that the tariff imbues SCG with the sole authority to maintain its own equipment hardly confers SCG's customers with the right to "enforce" this authority via a tort action for damages. Again, such a strained interpretation would require the Court to simply ignore the limitation of liability provision at paragraph nineteen.

Zurich were to succeed on the merits it would mean that Zurich, through its insured, would enjoy a privilege to recover damages from SCG while other ratepayers are precluded from doing the same. *See ICOM Holding*, 238 F.3d at 222 (holding that success on the plaintiff's "claims would result in discriminatory 'privileges'" that included "compensatory damages to which other customers subject to MCI's filed tariff would not be entitled").

While this outcome may seem harsh to some, the case law is clear that "the doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities." *Marcus*, 138 F.3d at 59. Because the SCG Tariff's limitation of liability provision unambiguously forecloses a negligence claim arising out of a service interruption, as is alleged in this complaint, the filed rate doctrine precludes Zurich's claims and this action must be dismissed.

**Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of February 2020.

        /s/ *Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE